**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

JOHN ROSS (# L1139)　　　　　　　　　　　　　　　　　　　　　　PETITIONER

v.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　No. 4:05CV121-P-B

L GREER, ET AL.　　　　　　　　　　　　　　　　　　　　　　　RESPONDENTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of John Ross for a writ of *habeas corpus* under 28 U.S.C. § 2254. The state has answered the petition, and Ross has replied. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* shall be denied.

### Facts and Procedural Posture

John Ross is in the custody of the Mississippi Department of Corrections and currently housed at the Central Mississippi Correctional Facility. He was convicted of murder in the Circuit Court of Sunflower County, Mississippi. He was sentenced on May 10, 2002, to life in the custody of the Mississippi Department of Corrections. (R.4 at 485)(No. 2002-KA-01212).[1]

Ross appealed his conviction and sentence to the Mississippi Supreme Court, raising the following issues:

> 1) Did the trial court err in admitting Dr. Hayne's testimony concerning the autopsy, bruises, trajectory of the bullet, and the cause and manner of death?
>
> 2) Did the trial court err in denying Ross' motion to exhume Deidre's body for examination?
>
> 3) Did the trial court err in admitting evidence concerning the scene of death in light of circumstances suggesting tampering with the evidence?

---

[1] Citations to the state court record shall be designated herein as "R." followed by the applicable volume number and page.

4) Did the trial court err in allowing into evidence Deidre's prior injuries?

5) Did the trial court err in allowing testimony of Ross' alleged jealous nature into evidence?

6) Did the State fail to meet it's burden of proof?

On June 15, 2004, the Mississippi Court of Appeals affirmed the petitioner's conviction and sentence. *Ross v. State,* 883 So.2d 1181 (Miss.Ct.App. 2004), *reh'g denied* (Aug. 3, 2004) (No. 2002-KA-01212-COA), *cert. denied* (Oct. 14, 2004).

On February 16, 2005, Ross filed an Application for Leave to Proceed in the Trial Court on a Motion for Post-Conviction Collateral Relief in the Mississippi Supreme Court (Cause No. 2005-M-340), raising the following ground for relief:

1) Petitioner was denied effective assistance of counsel because of counsel's failure to advise petitioner regarding the plea offer or the strength of the State's case.

The Mississippi Supreme Court denied the petitioner's application on March 16, 2005, holding that the claims of ineffective assistance of counsel failed to meet the standard set out in *Strickland v. Washington.*

In the instant Petition for Writ of Habeas Corpus, Ross raises the following issues:

**Ground 1** - The testimony of the State's witness failed to meet standards of admissibility concerning expert testimony.

**Ground 2** - Trial court erred in denying petitioner's motion to exhume body.

**Ground 3** - Trial court erred in admitting evidence of the death scene in light of circumstances suggesting evidence tampering.

**Ground 4** - Trial court erred in allowing evidence of remote injuries to deceased.

**Ground 5** - It was error not to strike character evidence of petitioner's alleged jealous nature.

**Ground 6** - State failed to meet burden of proof in a circumstantial evidence case.

**Ground 7** - Counsel was ineffective for failing to advise petitioner regarding plea offer.

### All Grounds Were Denied on the Merits in State Court

The Mississippi Supreme Court has already considered all grounds for relief in this petition on the merits and decided those issues against John Ross; hence, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas corpus* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of

"materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to Grounds One through Seven of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if the facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, Ross has failed to meet this burden for each ground; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas* review issues already decided on the merits.

### Grounds One Through Five: Admissibility of Evidence

Grounds One through Five challenge the admissibility of evidence introduced at trial. John Ross raised these issues on direct appeal, and the Mississippi Court of Appeals found them to be without merit. Generally, a claim challenging the state court's ruling on the admissibility of evidence under state law is precluded from *habeas corpus* review in federal court because the rulings of state courts on evidentiary matters are solely issues of state law. State court

evidentiary rulings can form the basis for *habeas corpus* relief "only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett,* 176 F.3d 809, 820 (5th Cir. 1999) (citing *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir.1994). "[I]n reviewing state court evidentiary rulings, the federal habeas court's role 'is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness' under the Due Process Clause." *Castillo v. Johnson*, 141 F.3d 218, 224 (5th Cir. 1998)(citations omitted). Ross has not shown that any evidence introduced "ran afoul of any specific constitutional right;" nor has he demonstrated that the his trial was rendered fundamentally unfair. As such, these claims are not amenable to federal *habeas corpus* review. "[M]ere errors of state law are not the concern of this Court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution." *Wainwright v. Goode,* 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1993). The alleged violation of state rules, without more, is not a legitimate ground for *habeas corpus* relief. *Edwards v. Butler,* 882 F.2d 160, 164 (5th Cir. 1989) (citations omitted). The allegations in the instant petition do not state a claim for violation of any constitutional right. As discussed below, none of the claims for *habeas corpus* relief set forth in Grounds One through Five rendered the prosecution of John Ross for the murder of his wife fundamentally unfair. Therefore, Grounds One through Five of the instant petition shall be denied.

## Ground One: The Testimony of Dr. Stephen Hayne

In Ground One, Ross alleges that the testimony of the state's witness failed to meet standards of admissibility concerning expert testimony. Referring to discrepancies between the autopsy and the testimony of Dr. Hayne, John Ross alleges that Dr. Hayne failed to document the autopsy reliably – and failed to follow generally accepted principles of forensic pathology – in forming his opinion. Other than stating that Dr. Hayne did not sufficiently document the results of the autopsy of the body of Deidre Ross, this ground for relief a mere conclusory allegation. In his amended petition and memorandum, Ross does not state what standards of admissibility regarding expert testimony Mississippi courts used during his 2002 murder trial. In his traverse, however, Ross argues that the trial court erred in using the test set forth in *Frye v. United States*, 293 F.1013 (C.A.D.C. 1923) – and that the trial court should, instead, have used the test in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993). Ross argues that use of the *Frye* standard, rather than the *Daubert* standard, for admission of expert testimony resulted in a decision contrary to clearly established federal law. This argument is without merit. Although the *Daubert* standard has applied to trials in federal court from the date of the United States Supreme Court *Daubert* decision in 1993, Mississippi did not begin using the *Daubert* standard until May 29, 2003, the date the Mississippi Supreme Court adopted the revised Mississippi Rules of Evidence incorporating the standard into the rules. *Mississippi Transportation Commission v. McLemore*, 863 So.2d 31, 39 (Miss. 2003). John Ross was tried from April 30, 2002, to May 4, 2002, for the murder of his wife Deidre. His trial occurred more than a year before Mississippi adopted the *Daubert* test. As such, this claim is without merit.

**Ground Two: Denial of Motion to Exhume the Victim's Body**

In Ground Two John Ross argues that the trial court erred in denying his motion to exhume the body of the victim, Deidre Ross. The petitioner primarily takes issue with the Dr. Stephen Hayne's measurements of the location where lethal bullet entered the head of Deidre Ross – and the angle and trajectory of the bullet's path. Dr. Hayne's measurements showed that the bullet entered just above and behind the victim's left ear canal, then passed from left to right at a five degree downward angle and an angle of thirty degrees from back to front. In addition, based upon the pattern of tattooing around the entrance wound, Dr. Hayne initially estimated that the revolver was fired from a location six to ten inches from the victim's head. In his deposition, Dr. Hayne explained that the six to ten inches figure was just an estimate – and that further testing with the actual .38 caliber piston was needed to find a more definitive figure. After such testing was concluded (which Dr. Hayne attended), he and the other testers found that the pistol was fired at a distance from two to three inches from the entrance wound. Given the location of the wound, the angle and trajectory of the bullet's path, and the fact that the pistol was fired from two to three inches from the victim's head, Dr. Hayne concluded that Deidre Ross could not have fired the bullet that killed her – because she could not have held the .38 caliber revolver to her head at the angle and distance necessary to inflict the lethal wound.

This finding was devastating to John Ross' primary defense: that he did not kill his wife Deidre – that, instead, she killed herself. By the time Ross had hired defense counsel and an expert in forensic pathology, Dr. Hayne had concluded his forensic examination of the body and Deidre Ross had been interred. At the hearing on Ross' motion to exhume the victim's body, defense counsel argued that the defense team did not have samples of blood and bodily fluids for

independent testing – and that the photographs and other documentary evidence from the autopsy were insufficiently clear and precise for the defense team's expert forensic pathologist to rebut the state's evidence. Defense counsel stated at the hearing that the bruises, scrapes, and scratches described in Dr. Hayne's autopsy report were not clear – or in some cases not visible – in the various photographs taken at the autopsy. For these reasons, counsel argued that exhumation was necessary for the defense team to gather independent evidence which might rebut the conclusions of Dr. Hayne. Near the end of the hearing, the state agreed to provide the defense expert samples of the victim's blood and bodily fluids. At the conclusion of the hearing, defense counsel requested to preserve the right to re-urge the motion, if necessary. The court granted that conditional request, but counsel did not renew his motion for exhumation.

By the date of trial the state appears to have provided the defense with clearer photographs of the entrance wound and the various injuries covering the victim's body. During trial several witnesses were shown photographs of the victim's body and asked if they had seen the injuries shown in the photographs at a party a few hours before her death. The witnesses testified that they could see the bruises and other injuries – and that Deidre Ross did not have those injuries at the party. Thus, without the necessity of an exhumation, the state provided samples of blood and bodily fluids and clearer photographs to the defense. The state did not, however, provide direct access to the body of Deidre Ross for measurement of the angle and trajectory of the bullet. Such access would have required an exhumation, which the defense did request again before trial. The Mississippi Court of Appeals held that Ross' failure to renew the motion was fatal to his claim – and that the trial court would not have been in error had it denied such a renewed motion.

The decision regarding exhumation of a body is governed under state law by MISS. CODE ANN. § 41-61-67(2) (Rev. 2001), which states, "[a]ny person may petition the circuit court for an order of exhumation. Upon a showing of sufficient cause, the court may order the body exhumed." Certainly, Ross has not set forth any constitutional error in the trial court's decision. The trial court's decision not to grant the exhumation did not render the defendant's trial fundamentally unfair. The defense expert, Dr. Bryant, had access to photographs, blood, fluids, and Dr. Hayne's autopsy report, which was based upon Dr. Hayne's measurements taken during the autopsy itself. Ross has not come forward with any information casting doubt on the accuracy of Dr. Hayne's measurements or findings. Dr. Hayne and Dr. Bryant both testified, and the jury clearly believed Dr. Hayne's account. The ruling of the Mississippi Court of Appeals is therefore reasonable in fact and in law; as such, this ground for relief is without merit.

### Ground Three: Admission of Photographs of the Death Scene in Light of Circumstances Suggesting Evidence Tampering

This issue is completely without merit. The photographs in question were taken during the investigation of the case – very soon after Deidre Ross' death. Defense counsel repeatedly referred to the photographs in question and argued that the police officers, investigators, or emergency responders had tampered with the scene. The state argued, however, that the police personnel and emergency responders would have absolutely no motive to do so, but someone who had killed the victim would have such motive – and that person was John Ross. Indeed, Ross admitted to investigators that he had touched his wife's body and moved it, allegedly in an attempt to render aid. Each side argued in favor of its interpretation of the evidence. Ross has offered no legal precedent or logical rationale for excluding the photographs. As such, the state court's decision on this matter was reasonable in fact and in law. This ground for relief is

without merit and shall be denied.

### Ground Four: Admission of Evidence of Injuries the Victim Sustained During Occasions Remote in Time from the Victim's Death

On two occasions, the trial court permitted the introduction of evidence of bruises on Deidre Ross that were sustained long before her death. During the testimony of Deidre's former boss, Steve Oswalt, the trial court permitted the introduction of testimony of Deidre's prior injuries – if the state could connect it to a time close to the victim's death. Oswalt testified that, at various times during Deidre's employment, she would show up to work with bruises. Oswalt did not, however, testify that John Ross had caused the bruises. The other occasion was when *defense counsel* asked a defense witness, Don Steed, about bruises on Deidre Ross. Steed testified that he had seen such bruises on Deidre's arms and legs in the past.

As the Mississippi Court of Appeals held, these brief statements from two witnesses out of over twenty – and one statement in answer to a direct question from defense counsel – did not violate MISS. R. EV. 404(a), regarding character evidence of the accused. The court holds that the state court's ruling on this issue was reasonable in fact and in law. Certainly, given the large amount of evidence introduced against John Ross at the trial of this case (discussed below), these two statements did not render the trial fundamentally unfair. For these reasons, the court finds the claims for relief in Ground Four to be without merit.

### Ground Five: Introduction of Evidence Tending to Prove that John Ross Had a Jealous Nature

In Ground Five, John Ross argues that the state introduced evidence tending to prove that he has a jealous nature, rendering the entire trial fundamentally unfair. Deidre's former boss Steve Oswalt stated that he knew that John Ross was a jealous person, and defense counsel

objected, but did not state a specific ground for objection. During cross-examination of a defense witness, Everett Williams, the witness agreed that Ross was a jealous person – and stated that Ross had accused Williams of having an affair with Deidre. Defense counsel did not object during this exchange. The Mississippi Court of Appeals held that, as defense counsel did not object at all to one instance of testimony regarding Ross' jealous nature, and failed to specify the grounds for his objection to the other, the ground for appeal was procedurally barred. This court also notes that these two brief statements came from two witnesses out of over twenty, and, as discussed below, the evidence against John Ross was quite strong, even without considering the small amount of character evidence at issue here. Certainly this evidence did not render the entire trial fundamentally unfair. As such, this ground for relief shall be denied.

## Ground Six: Proof Beyond Reasonable Doubt

In Ground Six, John Ross argues that the state failed to meet its burden of proof in its prosecution of the murder charge against him. Ross raised this issue on direct appeal, and the Mississippi Court of Appeals found it to be without merit. A federal court may review the sufficiency of the evidence when considering the claim for *habeas corpus* relief, but only where the evidence, *viewed in the light most favorable to the prosecution* is such that no rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979).

In this case, the state appellate court examined the evidence, considered in the light most favorable to the prosecution and accepted all credible evidence consistent with the verdict as true, and found:

> Ross mainly takes issue with Dr. Hayne's testimony, stating that it is insufficient
> to find that he shot Deidre. Instead, Ross claims that a reasonable hypothesis of

his innocence is the possibility that Deidre shot herself. However, all of Dr. Hayne's testimony was based upon a reasonable medical certainty that Deidre could not have fired the shot that killed her. Dr. Hayne's testimony was based upon physical facts, the location of the entrance wound, the resting place of the bullet, and the distance from the head from which the gun was fired. Deidre had bruises on her face and defensive wounds on her arms. We find that the State met its burden of proof; thus, this issue is without merit.

*Ross*, 883 So.2d at 1187. (Citation omitted).

Even considering only the evidence described below[2] (which was introduced in the trial of John Ross) the murder conviction must stand. John and Deidre Ross had been married for fourteen years and had three children. John Ross had used physical violence against Deidre in front of their friends. Specifically, while traveling in a van with their friends, John Ross had repeatedly slapped Deidre's head so violently that his friends had to pull over the van until the situation calmed down. Deidre had, at one time, weighed about three hundred pounds; however, after a surgical procedure on her stomach, she lost an astonishing amount of weight. At one point her weight declined to one hundred forty-two pounds. Deidre had been depressed and had been treated for depression with several antidepressant medications. She also had the habit of drinking to excess.

On the evening of May 20, 2000, John and Deidre Ross attended an outdoor party with some of their friends. Both John and Deidre were drinking. Deidre looked happy at the party; indeed, one of her friends said she "looked like a million bucks." John was, however, angry. On two separate occasions during the party, he used physical force against his wife. They argued near the stage at the party, and John threw a full bottle of beer at Deidre, missing her. Later, John grabbed Deidre's arm, jerked her toward him, and said, "Get your goddamned ass in the

---

[2]The evidence thus summarized is not exhaustive.

car." Numerous witnesses from the party testified that neither Diedre nor John had injuries when they were at the party.

In the early morning hours of May 21, 2000, Deidre Ross died of a gunshot wound to the head. In response to her death, John Ross first called his mother; then he called Emergency 911 and told the operator that his wife had just shot herself. Police officers arrived within two minutes. John Ross answered the door (with his young son standing in front of him); Ross had bruises and scratches on his arms, blood on his hands, and spatters of blood on his shirt. One of the police officers asked what had happened, and Ross told them that his wife had shot herself. Ross let the officers handcuff him for officer safety until they could ensure that he was not a danger to them. He directed the officers to his wife's body. Deidre Ross was lying on her back in bed with her right arm over her head. She had a bullet hole in the left side of her head, and there was blood on her, the pillow, the sheets, and the comforter. She was holding a .38 caliber revolver in her left hand, which was resting on her chest. Her left forefinger was resting on the trigger guard of the revolver. Deidre Ross was, however, right-handed. She had two black eyes and a large number of bruises on various parts of her body, as well as some scratches. Many of the bruises were less than six hours old, and many were consistent with defensive posturing (using the arms and hands to protect the head and abdomen from an attacker's blows). Most of the defensive posturing type injuries were located on Deidre Ross' left side, a scenario consistent with her warding off the blows of a right-handed attacker.

A photograph of the entry wound left by the bullet reveals that the wound is located just above and slightly behind the top of the victim's left earlobe. The trajectory of the bullet is five degrees in the downward direction and thirty degrees from back to front. Testing of the handgun

-13-

that fired the lethal bullet showed that the tip of the barrel was two to three inches from the victim's head when fired. Deidre Ross had a blood alcohol content of 0.22 when she died. She also had traces of crystal methamphetamine in her urine, but not in her blood. Likewise, although she had prescriptions for Xanax (an anti-anxiety drug) and several antidepressants, none of those drugs were found in her blood. From the testing conducted on her blood and urine, the only substances affecting Deidre Ross' behavior on the night of her death were alcohol and caffeine.

John Ross gave at least three accounts of the incident. He told one investigator, Captain Smith, that he and Deidre had argued, and he heard the shot while standing in front of the chiffarobe in their bedroom. Ross, however, gave two different accounts to Deidre's old boss, Steve Oswalt. He told Oswalt that he and Deidre had a terrible fight, then went to sleep – and the gunshot woke Ross while he was lying in bed. Then, in the same conversation, Ross told Oswalt that he was in the bathroom when the shot rang out.[3] Irene Ross (the mother of the petitioner) testified that she brought Ross family members to the crime scene the next day and cleaned it because she did not want the home to start smelling bad. She did not, however, obtain permission from the coroner or other authorities to do so.

Dr. Stephen Hayne, Mississippi's state pathologist, testified that Deidre Ross could not have delivered the fatal shot. Based upon the location of the entry wound, the distance of the barrel from the entry wound, the angle and trajectory of the bullet, and the fact that Deidre Ross' right arm was raised above her head, Dr. Hayne concluded that Deidre Ross could not have

---

[3]Interestingly, according to Irene Ross, John Ross' mother, although he called her about the incident before he even called emergency personnel, John never told her what happened the night Deidre Ross died.

moved her left arm into the position necessary to hold the revolver and deliver the fatal shot. He also testified that the bullet killed Deidre Ross instantly. Dr. Hayne opined that had Deidre Ross lay reclined on the bed (as she was found) and held the revolver to her head with her left hand and fired, the recoil from the revolver would have sent the revolver away from her head (most likely to the floor), and her lifeless hand and arm would have fallen out and away from her body. Instead, when authorities entered and documented the scene with notes and photographs, Deidre Ross' hand was in the middle of her chest, holding the revolver. This is consistent with someone staging the scene to look like a suicide. The only person with motive to stage the scene would be the person who killed Deidre Ross. The only adult in the home was John Ross, who had been angry enough with his wife several hours before she died to throw a full beer bottle at her.

Dr. James Bryant, an expert in forensic pathology hired by the defense, testified that Deidre Ross committed suicide. He based his conclusion almost exclusively on her previous diagnosis and treatment for depression – and that her doctor had prescribed various antidepressant medications that, when mixed with alcohol, can have serious side effects, including suicidal thoughts. Dr. Bryant also testified that Deidre Ross could have held the revolver in the position necessary to fire the shot that killed her. He attempted to demonstrate for the jury how Deidre Ross could have done so. When Dr. Hayne was later called as a rebuttal witness, however, he testified that Dr. Bryant did not duplicate the position necessary to deliver the fatal shot. The distance from Dr. Bryant's head was correct, but his right shoulder was not raised; the plastic gun was pointed in an upward direction, rather than downward, and the gun was not pointed forward at thirty degrees.

The evidence in this case, viewed in the light most favorable to the prosecution, clearly

supports the conviction of John Ross for the murder of his wife. Certainly a rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979). John Ross was angry at his wife the night she was shot – angry enough to throw a full beer bottle at her in public, curse her, and yanked her arm at the party they attended several hours before Deidre Ross died. Neither Deidre nor John had visible injuries at the party. The only people present in the home at the time the fatal shot was fired were John Ross, Deidre Ross, and their three children. No evidence indicates that the children fired the shot. Forensic evidence shows that Deidre Ross could not have fired the shot herself. The only other person in the home was John Ross. The authorities arrived and took photographs within half an hour of Deidre Ross' death. Both Deidre and John Ross had contusions and abrasions. Although Deidre's numerous *individual* bruises and scratches could be attributed, perhaps, to a fall or other accident, the *overall pattern* suggested that she was in a fight with right-handed adversary, and the bruises and scratches were consistent with defensive posturing. The scene appears to have been staged to make Deidre Ross' death look like a suicide, and the only person with a motive to stage the scene would be the person who killed her. John Ross was the only adult present in the home when his wife was shot. After viewing this evidence, a rational juror could find beyond reasonable doubt that John and Deidre Ross had a bitter fight after the party, and that John Ross then shot his wife in the head as she lay in bed, killing her. As such, this claim for relief is without merit and shall be denied.

## Ground Seven: Failure of Trial Counsel to
## Convince Ross to Inform Ross of the State's Plea Offer

In Ground Seven, John Ross argues that his counsel was ineffective for failing to inform him that the state had offered for Ross to plead guilty to manslaughter and accept a twenty-year sentence. This claim is completely at odds with his claim in his state application for post-conviction collateral relief that counsel indeed informed him of the offer – but did not make sufficient effort to convince him to accept the offered plea:

> Had [defense counsel] Hollowell advised his two new clients (petitioner's mother, who procured and paid him[,] and petitioner, who signed the retainer agreement)[4] of his professional judgment that it was almost impossible for petitioner to prevail with the evidence the state possessed to prove his guilt in Sunflower County, there would have been more than a "reasonable probability" that the mother would have organized the family to persuade petitioner not to pursue the trial course he seemed bent upon following.

SCR, Miscellaneous Pleadings, p. 12.

This new claim (failure to inform Ross about the existence of the state's plea offer) has not been exhausted in state court and shall thus be dismissed. Even if it had been exhausted, the petitioner is clearly being dishonest with the court; either counsel informed the petitioner about the plea offer by the state (as Ross averred in his state court pleadings) – or he did not (as Ross averred in his federal pleadings). Both the state application for post-conviction relief and the instant petition for a writ of *habeas corpus* were submitted under oath, on penalty of perjury, and Ross has clearly fabricated one of these claims. As the petitioner's allegation is clearly unreliable, the court shall not entertain it. The petitioner's allegations in Ground Seven have not been exhausted – and are without substantive merit and shall therefore be dismissed.

---

[4]The petitioner is obviously mistaken about this; only the petitioner himself would have been defense counsel's client, no matter who paid for the defense.

In sum, all of the petitioner's claims are without merit and shall be denied. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 25th day of September, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE